IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ALLEN J. MILLER**,                                      Civil Case No. 09-1413-KI

               Plaintiff,

                                           OPINION AND ORDER

   vs.

**MICHAEL J. ASTRUE,** Commissioner,
Social Security Administration,

               Defendant.


     Merrill Schneider
     Schneider Law Offices
     P. O. Box 14490
     Portland, Oregon  97293

             Attorney for Plaintiff

     Dwight Holton
     United States Attorney
     District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902

Thomas M. Elsberry
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Allen Miller brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for Child's Insurance Benefits. I reverse the decision of the Commissioner and remand for further proceedings.

## BACKGROUND

Miller filed an application for supplemental security income benefits ("SSI"), disability insurance benefits ("DIB"), and Child's Insurance Benefits on June 28, 2005. The applications were denied initially and upon reconsideration. After a timely request for a hearing, Miller, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on May 14, 2008.

On May 23, 2008, the ALJ issued a decision finding that Miller was disabled within the meaning of the Act and therefore entitled to benefits.[1]  Miller appealed "due to what we consider

---

[1]This decision is not in the record.

Page 2 - OPINION AND ORDER

major procedural matters." Tr. 30.  His appeal is not in the record, but he explains in his opening

brief that it was to amend his onset date to October 27, 1986, the day he turned 22 years old for

purposes of the Child's Insurance Benefits.  The ALJ issued another decision on August 12,

2008, finding Miller disabled beginning on October 27, 1986 based on his application for SSI

and Child's Insurance Benefits.  Having received a favorable decision, Miller asked to withdraw

his appeal of the May 23, 2008 decision.

On March 27, 2009, the Appeals Council declined to withdraw the appeal, indicating an

intention to issue a decision finding Miller not disabled as of October 27, 1986, but welcoming

comments or evidence to assist it in making a decision.  The Appeals Council explained that

under the rules, it could review the ALJ's decision if the decision was not supported by

substantial evidence.  Tr. 263.

On September 24, 2009, the Appeals Council concluded as follows:

[T]he Appeals Council does not agree with the Administrative Law Judge's
finding that the claimant's impairment met in severity an impairment listed in
Appendix 1 Subpart P, on or before the claimant attained age 22.

The record contains no evidence for the period prior to July, 2005.  The claimant
was born on October 29, 1964.  The record therefore does not establish the
existence of a severe impairment on or before October 28, 1986, i.e., before age
22.

Tr. 9.  This decision became the final decision of the Commissioner.

The Appeals Council separately remanded the ALJ's decision on Miller's SSI application

and ordered further proceedings.  The Appeals Council opined that the medical expert:

testified that the claimant's primary issue was the absence of sobriety and his use
of drugs and alcohol, and that he needed a program to help him achieve sobriety
and the ability to work.  The medical expert did not testify that the claimant's
impairments met or equaled in severity a listed impairment.

Page 3 - OPINION AND ORDER

Tr. 17.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).  A claimant is entitled to Child's Insurance Benefits if the claimant is able to show he had a disability that began before attaining the age of 22.  42 U.S.C. § 402(d).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the ALJ.  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial

gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Page 5 - OPINION AND ORDER

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S AND THE APPEALS COUNCIL'S DECISIONS

The ALJ found Miller had a severe impairment, an organic brain syndrome, which met the criteria of section 12.02 of  20 C.F.R. § 404, Subpart P, Appendix 1.  She found Miller's testimony credible and relied on the evaluation of Georgia G. Wilcox, Psy.D., who thought it was unlikely Miller could consistently work given his limited intellectual abilities and alcoholism. The ALJ also relied on the testimony of a medical expert, Robert McDevitt, M.D.  The ALJ concluded Miller had been under a disability from October 27, 1986 through the date of her decision.

The Appeals Council adopted the ALJ's finding that Miller had never engaged in substantial gainful activity and that he suffered from the severe impairment of organic brain syndrome.  However, the Appeals Council rejected the ALJ's conclusion that the impairment met a listing in Subpart P Appendix 1 on or before Miller became 22 years old.  It concluded there was no evidence for the period prior to July 2005 establishing "the existence of a severe impairment on or before October 28, 1986, i.e., before age 22."  Tr. 9.

**FACTS**

Miller was born on October 29, 1964 and completed the ninth grade. He was in special education classes from fourth through ninth grades, was absent from school a great deal of time, and testified that he did not regularly attend school because he was teased and beaten up. He dropped out of school at the beginning of the tenth grade.

Miller filed for disability alleging arthritic pain in his neck and back. Kim Webster, M.D., examined him and found neck pain with normal neuromuscular examination, low back pain with normal neuromuscular examination, alcoholism, and probable significant mental deficits. She opined, "My guess is that his mental functioning would significantly limit his job to fairly simple tasks." Tr. 167. A November 26, 2007 examination performed by Karen Lewison, M.D., found moderate degenerative disc disease in the mid and lower cervical spine.

Dr. Wilcox performed a psychodiagnostic evaluation of Miller. Miller reported that he first started drinking alcohol when he was 17 and, at the time of the evaluation in August of 2005, had continued to drink "as much as possible" and regularly six to eight beers a day. He used methamphetamine once a week or when it was offered to him. His Full Scale IQ score was 74. Dr. Wilcox diagnosed Alcohol Dependence, Methamphetamine Abuse, and Borderline Intellectual Function. She reflected that his self-care was more like that of a homeless person. He lived with his family and was completely dependent on them. She opined, "Given his limited intellectual abilities and his significant dependence on alcohol it is very unlikely he can effectively and consistently work in any job-related capacity at this time." Tr. 174.

On January 15, 2008, Miller appeared at the office of M. John Givi, Ph.D., Psy.D., for a second psychodiagnostic examination. Miller smelled like alcohol. Dr. Givi discontinued the

Page 7 - OPINION AND ORDER

evaluation after learning Miller had drunk two beers, believing Miller minimized the amount of alcohol he had consumed. Dr. Givi estimated Miller's premorbid cognitive ability to be in the Low Average range, but with word recognition skills in the Borderline range.

Miller has in the past worked as a dishwasher for about a year, a gas station attendant for about a year, worker in a grape vineyard, and other farm labor and temporary jobs. He last worked in 1999.

At the hearing before the ALJ in May 2008, Dr. McDevitt, a psychiatrist, sat through Miller's testimony and testified as a medical expert. He understood that he was to, as Miller's counsel put it, "interpret what there is" given the "old date last insured." Tr. 271. First, Miller testified that while he had not stopped drinking entirely, he had "kicked the drinking down really really well." Tr. 281. He was going four or five days without drinking, and drank beer in social situations. It had been four or five months since he had been drunk. He also testified that he had trouble holding a job, missed work frequently, and had difficulty working with and around people. He had lived with his brother or his mother his whole life.

Dr. McDevitt testified at the hearing that Miller had chronic alcohol and drug abuse problems and had "never functioned in an adult fashion." Tr. 298. Dr. McDevitt could provide no medical reason for his latter conclusion given that Miller had low normal intelligence, as opposed to mental retardation. Dr. McDevitt also suggested Miller suffered from "chronic, phobic, or agoraphobic kind of behavior," and "inability to socialize[.]" Tr. 298. He agreed that Miller had "not really functioned outside of his home" and "he would have to probably be in some kind of workshop where he would be work hardened and also rehabilitated to a certain extent." Id. He opined that Miller's "presentation is so simplistic and so primitive that it

indicate[s] an individual who is totally unsocialized and has been in an overprotective

environment for most of his, most of his life." Tr. 301.  He also suggested "we have a lifetime

history here of somebody who [has] operated at a very very primitive level."  Tr. 302.  He

concluded Miller could perform simple, routine tasks if he could avoid being around other

people.  However, Dr. McDevitt did think that Miller needed "some kind of structured program

to get into a productive, into sobriety too."  Tr. 306.  He believed that "the structure would be for

alcohol but also even for functioning.  The current structure of his mother and his brother who

have been overprotective of him for years are not going to keep him going to work everyday."

Tr. 307.

## DISCUSSION

I.    <u>Whether the Appeals Council's Action Constituted a "Reopening" of the ALJ's Decision</u>

Miller argues that the Appeals Council did not have "good cause" to "reopen" the ALJ's

August 2008 decision.  The Commissioner, however, explains that the Appeals Council did not

"reopen" the decision and this Court has no jurisdiction to review the reasons for the Appeals

Council's decision to refuse to withdraw Miller's request for review.  In contrast, the Court does

have jurisdiction to review the Appeals Council's final decision finding Miller not disabled prior

to age 22.

I agree with the Commissioner.  The relevant statute, 42 U.S.C. § 405(g), limits this

court's review only to final agency decisions.  That section provides in part:

> Any individual, after any Final decision of the Secretary made after a hearing to
> which he was a party, irrespective of the amount in controversy, may obtain a
> review of such decision by a civil action commenced within sixty days after the
> mailing to him of notice of such decision or within such further time as the
> Secretary may allow.

Page 9 - OPINION AND ORDER

42 U.S.C. §405(g).

In order to constitute a "final decision," a claimant must comply with all of the following administrative steps:

(1) *Initial determination.* This is a determination we make about your entitlement or your continuing entitlement to benefits or about any other matter, as discussed in § 404.902, that gives you a right to further review.

(2) *Reconsideration.* If you are dissatisfied with an initial determination, you may ask us to reconsider it.

(3) *Hearing before an administrative law judge.* If you are dissatisfied with the reconsideration determination, you may request a hearing before an administrative law judge.

(4) *Appeals Council review.* If you are dissatisfied with the decision of the administrative law judge, you may request that the Appeals Council review the decision.

(5) *Federal court review.* When you have completed the steps of the administrative review process listed in paragraphs (a)(1) through (a)(4) of this section, we will have made our final decision. If you are dissatisfied with our final decision, you may request judicial review by filing an action in a Federal district court.

20 C.F.R. § 404.900.

The Appeals Council's March 27, 2009 refusal to withdraw Miller's appeal and review the ALJ's decision was not "made after a hearing." 42 U.S.C. § 405(g); see also Sheehan v. Sec'y of Health, Educ. & Welfare, 593 F.2d 323, 325 (8th Cir. 1979) (district court lacked jurisdiction to review denial of an extension of time to file request for review); Peterson v. Califano, 631 F.2d 628, 630 (9th Cir. 1980) (district court lacked jurisdiction to review denial of an extension of time to file complaint in district court). Accordingly, this court has no

jurisdiction to review the reasons for the Appeals Council's decision to deny Miller's request to withdraw his appeal or to review the Appeals Council's decision to evaluate the ALJ's decision.

For the same reason, the Appeals Council's action does not constitute a "reopening" of the ALJ's decision. In these circumstances, the ALJ's decision is not a "final determination or decision" as is meant by the regulations that govern reopening a decision. 20 C.F.R. § 404.987 (Social Security Administration "may reopen a final determination or decision . . . , or [the claimant] may ask that a final determination or a decision" be reopened); 20 C.F.R. § 404.900 (listing steps to make a decision final). A decision is not final until the Appeals Council either denies review or assumes jurisdiction and issues its own decision. 20 C.F.R. § 404.955 (ALJ's decision is binding unless claimant "request[s] a review of the decision by the Appeals Council within the state time period, and the Appeals Council reviews your case"). Here, the Appeals Council accepted review.

Miller replies that he did not ask the Appeals Council to review the ALJ's amended decision, only her original decision; as a result, the Appeals Council did not have jurisdiction to review the ALJ's amended decision since it did so beyond the 60 day deadline for initiating review on its own. 20 C.F.R. § 404.969 (Appeals Council may initiate review within 60 days after the date of a decision). I first note that the Appeals Council was not required to withdraw Miller's request for review. 20 C.F.R. § 404.971(a) ("The Appeals Council may also dismiss any proceedings before it if (a) You and any other party to the proceedings files a written request for dismissal") (emphasis added); see also SSA Program Operations Manual System § GN 03104.100 (2010), available at https://secure.ssa.gov/apps10/ poms.nsf/lnx/0203104100 (same). Miller requested review of the ALJ's initial decision due to procedural errors and the Appeals

Council was entitled to retain jurisdiction to effectuate review of the decision. Although the ALJ replaced her first decision with a second, all characterizations of the second decision indicate that the second decision simply corrected procedural errors rather than making substantive changes.[2] Consequently, the Appeals Council's review of the second decision was within its jurisdictional charge.

In sum, this court has no jurisdiction to review the reasons for the Appeals Council's decision to decline to withdraw Miller's appeal and its decision to review the ALJ's decision. The Appeals Council properly exercised jurisdiction over the ALJ's August 12, 2008 decision.

II.    Whether the Appeals Council's Decision Denying Disability is Supported by Substantial Evidence

The Commissioner agrees that the court has jurisdiction to review the Appeals Council's September 24, 2009 decision that Miller was not disabled prior to age 22.

Miller argues that the Appeals Council's determination is not supported by substantial evidence. He points to Dr. McDevitt's testimony that Miller suffers from agoraphobia and is someone who has a "lifetime history" of operating at a "very very primitive level." Tr. 302. Dr. McDevitt recommended a structured environment offering Miller rehabilitation. The ALJ relied on this testimony and found that Miller's organic brain disorder met the criteria of Listing 12.20.

I agree with Miller that in rejecting the ALJ's opinion, the Appeals Council failed to recognize that Dr. McDevitt's testimony reached backward and provided evidence as to Miller's inability to function for most of his life. Dr. McDevitt was present for the conversation between Miller's counsel and the ALJ that Dr. McDevitt's testimony would, at least in part, interpret the

---

[2]The initial decision is not in the record.

Page 12 - OPINION AND ORDER

evidence and determine Miller's condition as of his alleged onset date of disability. The Appeals Council did not attempt to grapple with Dr. McDevitt's testimony at all. Instead, the Appeals Council simply found "no evidence for the period prior to July, 2005" and that the record "does not establish the existence of a severe impairment on or before Ocotober 28, 1986, i.e., before age 22."

Dr. McDevitt's testimony certainly implies that Miller's impairment is lifelong. Despite Dr. McDevitt's resistance to giving a diagnosis, he opined Miller could only be successful in a structured environment (and not solely due to Miller's alcoholism), that he was un-socialized, and that he would have trouble making it to work every day. Even if, as the Commissioner argues, the Appeals Council interpreted Dr. McDevitt's testimony to be directed at Miller's alcoholism (relying on the Appeals Council's analysis in the related decision on Miller's SSI application), this is not a rational interpretation of the evidence. Dr. McDevitt repeatedly discussed Miller's functional limitations other than, and in addition to, alcoholism.

I also note other evidence that directly relates to the relevant period before the earliest medical record of 2005. Miller's school records show grades that were mostly Ds and Fs, with repeated references to poor attendance, inability to use class time effectively, being unprepared for class, not participating in class activities, and being uncooperative in class.

The Appeals Council erred in failing to consider Dr. McDevitt's testimony in reaching its decision.

III.    Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court has

the flexibility to remand to allow the ALJ to make further determinations.  Connett v. Barnhart,

340 F.3d 871, 876 (9th Cir. 2003).

I find a remand is necessary to flesh out the record and to remain consistent with any

decision the Commissioner has reached on Miller's SSI application.  Although the Appeals

Council erred in omitting any discussion of Dr. McDevitt's testimony, it is clear in its remand of

the ALJ's decision on Miller's SSI application that it believed the ALJ improperly concluded

Miller's organic brain disorder met or equaled a listed impairment considering the evidence she

had received up to that point.  In its decision, the Appeals Council asked the ALJ to obtain a

medical expert to "clarify the nature and severity of the claimant's impairments and, if warranted,

the date of onset."  Tr. 17 (emphasis added).  There is no reason why Miller's application for

Child's Insurance Benefits should be treated differently.

Accordingly, this case is remanded to determine the following issues: (1) the onset date of

Miller's severe impairment; and (2) whether the impairment met or equaled any of the listings.

The ALJ should proceed to steps four and five if appropriate.  The ALJ should hold another

hearing and should obtain the testimony of Dr. McDevitt or another expert to resolve the

outstanding issues.


///


///


///

Page 14 - OPINION AND ORDER

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the

Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the

record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____24th_____ day of January, 2011.


                                        ____/s/ Garr M. King_____
                                        Garr M. King
                                        United States District Judge